United States District Court
Southern District of Texas
**ENTERED**
March 08, 2023
Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

<u>CONSOLIDATED</u>

| | | |
|---|---|---|
| PARAGON ASSET COMPANY LTD, | § | |
| AS OWNER OF THE DRILLSHIP DPDS1, | § | |
| | § | CIVIL ACTION NO. 1:17-CV-203 |
| V. | § | |
| | § | |
| GULF COPPER & MANUFACTURING | § | |
| CORPORATION, *et al.*, | § | |

*******

| | | |
|---|---|---|
| SIGNET MARITIME CORPORATION, | § | |
| AS OWNER OF THE TUG SIGNET | § | |
| ENTERPRISE, ITS ENGINES, TACKLE, ETC., | § | |
| IN A CAUSE OF EXONERATION FROM OR | § | |
| LIMITATION OF LIABILITY, | § | CIVIL ACTION NO. 1:17-CV-247 |
| | § | |

*******

| | | |
|---|---|---|
| SIGNET MARITIME CORPORATION, | § | |
| AS OWNER OF THE TUG SIGNET | § | |
| ARCTURUS, ITS ENGINES, TACKLE, ETC., | § | |
| IN A CAUSE OF EXONERATION FROM OR | § | |
| LIMITATION OF LIABILITY, | § | CIVIL ACTION NO. 1:18-CV-035 |
| | § | |

**<u>ORDER AND OPINION</u>**

On August 25, 2017, the DPDS1, a drilling ship owned by Paragon Asset Company Ltd.,

unmoored from its dock during Hurricane Harvey.  The ship allided with the dock and collided

with two tugboats that had been tasked with holding the ship in place during the storm.  The

DPDS1 propelled the tugboats into adjacent semisubmersible oil rigs, drifted out to sea, and about

two days later allided with a University of Texas research pier.

Three Complaints in Limitation ensued, filed by Paragon as the owner of the DPDS1 and

by Signet Maritime Corporation as the owner of the two tugboats.  The Court consolidated the

Complaints in Limitation, and Noble as the owner of the rigs, Gulf Copper as the owner of the

dock, the American Club as Signet's insurer, and the University of Texas as the owner of the research pier all filed various claims and counterclaims.

Before trial, Noble, Gulf Copper, and the University of Texas settled.  In July and August of 2021, the Court held a bench trial and then decided the issues as between Paragon, Signet, and the American Club.[1]  (*See* Amended Order and Opinion, Doc. 473)  Now, all that remains is resolution of Signet's Motion to recover attorney's fees, related nontaxable expenses, and taxable costs.  (Motion, Doc. 475)

## I.    Analysis

### A.  Claims at Issue

The Court's Amended Order and Opinion (Doc. 473) outlines the factual and procedural history of this case in detail.  *See Paragon Asset Co. Ltd. v. Gulf Copper & Mfg. Corp.*, No. 1:17-CV-203, 2022 WL 3445744, at \*1–20 (S.D. Tex. Aug. 17, 2022).  For purposes of Signet's Motion, the following four categories of the claims and defenses that Signet raised during the litigation prove relevant:

(1) The "Noble Claim" refers to Signet's efforts in "defending against Noble Drilling's action for damages to its two semi-submersible drilling rigs and pursuing recovery from Paragon for contractual indemnification for its settlement payment to Noble Drilling and its attorney's fees, related nontaxable expenses, and taxable costs incurred in defending and pursuing this claim".  (Motion, Doc. 475, 12 (footnote omitted))

(2) The "Paragon Claim" refers to Signet's efforts "defending against Paragon's action for damages to the DPDS1 and pursuing recovery from Paragon for contractual indemnification for its attorney's fees, related nontaxable expenses, and taxable costs incurred in defending and pursuing this claim".  (*Id.*)

(3) The "Signet Claim" encompasses Signet's work "pursuing Paragon for its recoverable

---

[1] The references to Paragon include the four related entities who are parties in this consolidated matter and who are jointly and severally liable for any recovery awarded to Signet: Paragon Asset Company, Ltd., Paragon Offshore Limited, Paragon International Finance Company, and Paragon Offshore Drilling LLC.

damages to its two tugs based on claims of negligence and unseaworthiness". (*Id.*)

(4) The "UT Claim" refers to Signet's work "defending against UT's action for damages to its dock and pursuing recovery from Paragon for contractual indemnity for its settlement payment to UT and its attorney's fees and costs incurred in defending and pursuing this claim". (*Id.*)

Signet seeks recovery of attorney's fees, costs, and expenses incurred in connection with the Noble and Paragon Claims. (*Id.*)  Signet also requests its costs expended in connection with the Signet Claim. (*Id.* at 12–13)  Signet does not request recovery of its attorney's fees, costs, or expenses related solely to the UT Claim. (*Id.* at 12)

### B. Attorney's Fees and Expenses Under the Tariff

In "[m]aritime disputes generally . . . 'litigants must pay their own attorneys' fees.'" *Tex. A&M Rsch. Found. v. Magna Transp., Inc.*, 338 F.3d 394, 405 (5th Cir. 2003) (quoting *Galveston Cnty. Nav. Dist. No. 1 v. Hopson Towing Co.*, 92 F.3d 353, 356 (5th Cir. 1996)).  However, parties can contract otherwise, such as through indemnification agreements.  *See Becker v. Tidewater, Inc.*, 586 F.3d 358, 375 (5th Cir. 2009).  A "general indemnity provision typically includes recovery of attorneys' fees incurred in defending against a claim covered by the indemnity provision".  *Id.*  An indemnity provision can encompass damages occasioned by an indemnitee's own negligence if that coverage is "clearly and unequivocally expressed." *See Seal Offshore, Inc. v. Am. Standard, Inc.*, 736 F.2d 1078, 1081 (5th Cir. 1984).

When interpreting an indemnity provision under federal maritime law, courts follow general principles of contract construction, looking "first to the contract language".  *Ingalls Shipbuilding v. Fed. Ins. Co.*, 410 F.3d 214, 220 (5th Cir. 2005).  "A maritime contract containing an indemnity agreement . . . should be read as a whole and its words given their plain meaning unless the provision is ambiguous."  *Weathersby v. Conoco Oil Co.*, 752 F.2d 953, 955 (5th Cir. 1984).

In its Amended Order and Opinion (Doc. 473), the Court concluded that the Signet Tariff is an enforceable contract that governs the dispute between Paragon and Signet. (*Id.* at 62) The Tariff contains provisions that Signet contends warrant the recovery that it seeks in its Motion.

As to claims between Paragon and Signet, Section 16(f) states that Paragon "agree[s] to indemnify the Signet Group from and against any and all claims for or in respect of (i) damage to or loss of property including vessels and equipment of [Paragon], whether owned, leased, or hired, in excess of the applicable amounts set forth in Clause 16(D) above, . . . regardless of legal fault of Signet Group, Owners Group, or any third parties or their respective vessels, equipment, or other property." (Tariff, Doc. 414, 10)

With respect to third party actions, Section 16(h)(ii) provides that "[Paragon] agree[s] to indemnify Signet Group from and against third party liabilities arising out of this agreement . . . to the extent of the negligence or other fault of [Paragon]." (*Id.*)

More generally, Section 20(c) provides that a "prevailing party in asserting a claim for money due or indemnification under this Tariff shall be entitled to recover its attorneys fees and costs and expenses from the other party."[2] (*Id.* at 12)

### 1. The Noble Claim

Signet requests recovery of its attorney's fees, expenses, and costs incurred in connection with its defense against claims by Noble for damage to its rigs occurring when Signet tugs allided with those rigs.

The Court previously determined that Paragon bore 100% responsibility for the allision of the Signet tugs with Noble's rigs. Section 16(h)(ii) of the Tariff requires that Paragon "indemnify Signet Group from or against third party liabilities arising out of this agreement . . . to the extent

---

[2] Section 16(a)(i) defines "Claims" broadly, as "losses, liabilities, damages, suits, judgments, causes of action, or other claims or demands or costs (including attorneys fees and expenses or other costs of defense or incurred in asserting or enforcing the provisions of this Tariff), arising directly or indirectly out of, incident to, or connected with this Tariff, asserted by anyone including their respective heirs, legal representatives, spouses, estate, successors, assigns, or survivors." (Tariff, Doc. 414, 8) Paragon does not contest that the four categories of claims identified in Signet's Motion qualify as "Claims" under Section 16(a)(i).

of the negligence or other fault of [Paragon]." (*Id.* at 10)  Section 16(h)(ii) thus entitles Signet to full indemnity from Paragon for any liabilities as to Noble.  (Amended Order and Opinion, Doc. 473, 76–77, 81–82)

Signet now relies on Section 20(c), arguing that it is a "prevailing party in asserting a claim for money due or indemnification under this Tariff" and, as a result, is "entitled to recover its attorneys fees and costs and expenses from the other party [i.e., Paragon]."  (Tariff, Doc. 414, 12)

Paragon responds with a narrow construction of the Tariff, arguing that Signet does not qualify as a "prevailing party" for purposes of Section 20(c) until the Court enters a Final Judgment against Paragon.  (Response, Doc. 481, 8)  Under this reading, Paragon continues, Signet can recover as a "prevailing party" only those attorney's fees, costs, and expenses incurred after the entry of Final Judgment.  According to Paragon, reading the Tariff otherwise impermissibly renders the provision a penalty clause.[3]  (*Id.* at 11)

The Court finds that the natural construction of Section 20(c) renders Signet a prevailing party and entitles it to recovery of its attorney's fees, costs, and expenses incurred in connection with the Noble Claim.  Generally, courts consider a "prevailing party" as a "party in whose favor a judgment is rendered".  *See, e.g.*, *Jones v. Diamond*, 594 F.2d 997, 1026 (5th Cir. 1979), *on reh'g*, 636 F.2d 1364 (5th Cir. 1981) (quoting 6 Moore's Federal Practice ¶ 54.70(4)).  "[I]n the context of a maritime contract dispute", the Fifth Circuit has "adopt[ed] the same definition of 'prevailing party' [ ] as in the [42 U.S.C.] § 1988 context."  *Genesis Marine, L.L.C. of Delaware v. Hornbeck Offshore Servs., L.L.C.*, 951 F.3d 629, 631 (5th Cir. 2020).  Thus, under maritime contract law, a

---

[3] Paragon argues that in contrast to Section 16(h)(ii), two Tariff provisions "create advance obligations to indemnify which *do not* require the parties to obtain a determination of fault".  (Response, Doc. 481, 11–12 (emphasis in original) (citing Sections 16(e)(i)–(ii), which concern consequential losses and pollution claims))  In addition, Paragon claims that Sections 16(e)(i)–(ii) entitle it to indemnification from Signet, and requests that the Court exercise its equitable powers to apply an offset against any recovery by Signet.  (*Id.*)  The Court disagrees on both points.  First, the Court finds Paragon's construction of Sections 16(e)(i)–(ii) unpersuasive.  And as to the requested offset, Signet correctly responds that Paragon waived the argument by not previously advancing it.  Paragon only asserted indemnification claims against Signet under the Master Charter Agreement, and did not allege alternative theories for indemnification under the Tariff.  (*See* Paragon's Answer, Counterclaim, and Rule 14(c) Tender, Doc. 18, 26–29)  Moreover, even if Paragon did not waive the argument, the company does not support its proposed offset with supporting authorities. The Court declines to award the requested relief.

prevailing party is one who obtains a judgment that "materially alters the relationship between the parties." *Id.* While a litigant may not be recognized as a "prevailing party" until the entry of final judgment—i.e., the moment that a court confirms that the party prevailed—that fact does not preclude the recovery of its attorney's fees incurred during the litigation that resulted in the final judgment. Section 20(c) of the Tariff contains no language imposing a temporal limitation on the attorney's fees, expenses, and costs that the prevailing party may recover. The most natural and generally understood meaning of the provision's text is that a party that successfully "assert[s] a claim for money due or indemnification under this Tariff" can recover from the opposing party the attorney's fees, costs, and expenses required to prevail on the claim. In the current matter, Signet prevailed in connection with its claim for indemnification from Paragon as to the Noble Claim. As a result, Signet qualifies as a prevailing party under Section 20(c).

Indeed, Paragon's construction of "prevailing party" contravenes the usual application of fee-shifting contractual provisions, including in the admiralty context. "'Prevailing party' provisions 'generally state that when a dispute over the contract arises the party who loses in litigation must pay the legal fees of the party who prevails in litigation.'" *Malin Int'l Ship Repair & Drydock, Inc. v. M/V SEIM SWORDFISH*, 611 F. Supp. 2d 627, 636 (E.D. La. 2009), *aff'd sub nom. Malin Int'l Ship Repair & Drydock, Inc. v. Veolia Es Special Servs., Inc.*, 369 F. App'x 553 (5th Cir. 2010) (quoting *Rockland Tr. Co. v. Comput. Associated Intern., Inc.*, 2008 WL 3824791, at *5 (D. Mass. Aug. 1, 2008)). District courts have applied "prevailing party" provisions to award attorney's fees incurred throughout the litigation. *See, e.g.*, *XTO Energy Inc. v. Frontier Drilling, LLC*, 549 F. Supp. 3d 526, 543 (N.D. Tex. 2021) (finding that the contract's provision that "the prevailing party shall be entitled to recover reasonable attorneys' fees and costs" entitled the plaintiff "to its reasonable attorneys' fees and costs expended *in this litigation*" (emphasis added)); *Pitre v. Tetra Techs., Inc.*, No. CIV.A. 06-4504, 2008 WL 4831657, at *4 (E.D. La. Nov. 6, 2008) (finding that the contract's "prevailing party" provision entitled the third-party plaintiff to attorney's fees "incurred by [the third-party plaintiff] in its attempts to secure [the defendant's]

compliance with the contractual indemnity provision").  Admittedly, in each case, the court construed the precise language used in the applicable contract, which varied from the text of the Tariff.  But the Court is unaware of an instance with contractual language substantively similar to the text of the Tariff, and in which a court awarded only a prevailing party's attorney's fees, expenses, and costs incurred after the entry of a final judgment, while declining to award the attorney's fees, expenses, and costs that the prevailing party incurred to secure the final judgment in its favor.  Paragon cites to no such case.  And the Tariff's language does not support such a construction.

As Signet has prevailed in its claim for indemnification from Paragon under Section 20(c) as to the Noble Claim, it is entitled to recover its attorney's fees, expenses, and costs incurred litigating that claim.

### 2.  Paragon Claim

Signet seeks recovery of its attorney's fees, expenses, and costs incurred "defending against Paragon's action for damages to the DPDS1 and pursuing recovery from Paragon for contractual indemnification for its attorney's fees, related nontaxable expenses, and taxable costs incurred in defending and pursuing this claim".  (Motion, Doc. 475, 12)

Section 16(f) of the Tariff concerns Paragon's "Indemnity Obligations", and provides that "[Paragon] agree[s] to indemnify the Signet Group from and against any and all claims for or in respect of [ ] damage to or loss of property including vessels and equipment of [Paragon] . . . regardless of legal fault of Signet, Owners Group, or any third parties".  (Tariff, Doc. 414, 10) Paragon alleged claims against Signet for damages to the DPDS1.  Signet defended against those claims, including asserting its right to indemnification under Section 16(f), "regardless of legal fault of Signet, [Paragon], or any third parties".  The Court finds this provision enforceable because it clearly and unequivocally expressed that Paragon would indemnify Signet even for damages occasioned by Signet's own negligence. *See Seal Offshore*, 736 F.2d at 1081.

Paragon argues that Signet did not recover any indemnification from Paragon for damages to the DPDS1.  (*See* Response, Doc. 481, 18–19)  Paragon's statement is true, as the Court found Paragon fully liable for any damages to the DPDS1 that occurred on August 25, and found that Paragon had not satisfied its burden of proof as to any damages to the DPDS1 stemming solely from the allision with the UT pier on August 28.  In short, Signet did not recover on its indemnification defense because Paragon did not prove its entitlement to damages from Signet.  But these findings do not negate Signet's right to indemnification under the Tariff.  Signet demonstrated that had Paragon proven any damages attributable to Signet's negligence, Signet would have received protection from the Tariff's indemnification provision.  This finding materially altered the relationship between Paragon and Signet with respect to any damages related to the DPDS1.  As a result, Signet has prevailed on the claims for indemnification under the Tariff for the Paragon Claim.

Signet then relies again on Section 20(c), arguing that as to this claim, it is a "prevailing party in asserting a claim for money due or indemnification under this Tariff".  The Court agrees, rendering Signet entitled to recover its "attorneys fees and costs and expenses" related to the Paragon Claim.

### C.  Costs Under Federal Rule of Civil Procedure 54(d)(1)

Signet requests recovery of its taxable costs related to the Noble and Paragon Claims, as well as those related to claims based on the initial breakaway of the DPDS1 on August 25.

"Unless a federal statute, these rules, or a court order provides otherwise, costs—other than attorney's fees—should be allowed to the prevailing party."  FED. R. CIV. P. 54(d)(1).  In this case, the Court has already determined that Signet is entitled to "its court costs incurred as to the claims surrounding the initial breakaway of the DPDS1 on August 25."  (Amended Order and Opinion, Doc. 473, 83)  This determination encompasses taxable costs incurred in connection with the Signet Claim.  As to the Noble and Paragon Claims, the Court previously concluded in

this Order and Opinion that Signet is a "prevailing party". Accordingly, under Rule 54(d)(1), Signet is entitled to recovery of its taxable costs as to the Signet, Noble, and Paragon Claims.

## II.  Calculation of the Attorney's Fees Award

To fashion an award of attorney's fees, courts use a "well-established" two-step method. *Migis v. Pearle Vision, Inc.*, 135 F.3d 1041, 1047 (5th Cir. 1998).  "First, the court calculates a 'lodestar' fee by multiplying the reasonable number of hours expended on the case by the reasonable hourly rates for the participating lawyers."  *Id.*  Second, a district court applies the *Johnson* factors and "considers whether the lodestar figure should be adjusted upward or downward depending on the circumstances of the case."  *Id.* (citing *Johnson v. Ga. Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974)).

In this case, the parties agree that the lodestar method applies, and that the *Johnson* factors do not warrant an adjustment to the lodestar fee.  (Motion, Doc. 475, 22; Response, Doc. 481, 15)  In addition, Paragon does not challenge the reasonableness of the hourly rates that Signet requests for its attorneys.[4]  Rather, Paragon objects to Signet's entitlement to various categories of services and the number of hours for which Signet requests recovery.

"The party seeking an award of fees should submit evidence supporting the hours worked and rates claimed."  *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983).  In connection with its Motion, Signet submitted over 1,200 pages of invoices, expense reports, and affidavits from its attorneys.  In total, the company initially requested an award of $1,515,842.75 in attorney's fees. (Motion, Doc. 475, 10)

In response, Paragon challenged over 4,600 of the time entries within Signet's documentation.[5]  (Reply, Doc. 484, 13)  Signet accepted some of Paragon's objections, reducing the requested attorney's fees by $109,593.75.  (*Id.*)  As for the remaining objections, the Court addresses each category in turn.

---

[4] The Court finds that the hourly billing rates for Signet's counsel are reasonable.
[5] Paragon did not provide grounds for some of its objections.  The Court overrules those unspecified objections.

### A.  Vagueness

Paragon objects to 3,249 of Signet's time entries as vague.  The legal services for these entries total 1,842.2 hours.  (Response, Doc. 481, 15–16)

A "district court may properly reduce or eliminate hours when the supporting documentation is too vague to permit meaningful review." *La. Power & Light Co. v. Kellstrom*, 50 F.3d 319, 326 (5th Cir. 1995).  However, "practical considerations of the daily practice of law . . . preclude 'writing a book' to describe in excruciating detail the professional services rendered for each hour or fraction of an hour." *Id.* at 327.  Thus, district courts use the context of timesheets and the litigation timeline as a whole to review individual entries.  *See, e.g.*, *Becker v. Tools & Metals, Inc.*, No. 3:05-CV-0627-L-BK, 2012 WL 12985112, at *16 (N.D. Tex. Dec. 12, 2012).  If time entries in context permit meaningful review, the court need not preclude recovery for the billed time.  *See Kellstrom*, 50 F.3d at 326.

As to most of the entries that Paragon characterizes as "vague", the context of the invoice and the litigation timeline provide the necessary clarification to overrule the vagueness objection. One exception exists, for which the context does not provide a meaningful review of the entry. The Court sustains Paragon's vagueness objection to this entry,[6] and overrules the objection as to the remaining entries.

### B.  Block Billing

Paragon objects to Signet's "block billing" in 123 entries, which represent 485.9 hours of legal services.  (Response, Doc. 481, 16)

Block billing is the practice of "describing multiple activities in only one time entry." *C & D Prod. Servs. v. Dir., Off. of Worker's Comp. Program*s, 376 Fed. App'x 392, 394 (5th Cir. 2010). Block billing frustrates a court's ability to "conduct meaningful review" of the fees claimed. *Barrow v. Greenville Indep. Sch. Dist.*, No. 3:00-CV-0913-D, 2005 WL 6789456, at *12 (N.D.

---

[6] Doc. 485, Obj. 96.

Tex. Dec. 20, 2005), *aff'd*, No. 06-10123, 2007 WL 3085028 (5th Cir. Oct. 23, 2007). At the same time, if the total hours recorded for the multiple activities represents a reasonable amount of time for the indicated services, the court can award those attorney's fees. And a time entry for numerous hours for a single activity does not constitute block billing.

After reviewing the challenged entries, the Court finds that they all record individual tasks that collectively required substantial time to complete, and for which the attorney billed a reasonable number of hours. The Court overrules all of Paragon's objections for block billing.

### C. Clerical Work

Paragon objects to 595 time entries by attorneys as representing clerical work. Those entries represent 288.9 hours of billed services.[7] (Response, Doc. 481, 16–18)

In fashioning an attorney's fee award, district courts "distinguish between legal work, in the strict sense, and investigation, clerical work, compilation of facts and statistics and other work which can often be accomplished by non-lawyers". *Cruz v. Hauck*, 762 F.2d 1230, 1235 (5th Cir. 1985) (quoting *Johnson*, 488 F.2d at 717). Parties entitled to recover attorney's fees may include in their fee application the clerical work that paralegals and similar professionals perform. *See id.* When attorneys perform clerical work rather than legal work, courts can award recovery for those services, but can compensate the hours at a lower rate, such as that of a paralegal. *Id.*

Within Signet's time records, the Court finds that attorneys billed at their normal hourly rate for services that represent clerical work. Representative examples of such tasks include filing documents, ordering transcripts, and corresponding with process servers. The Court sustains Paragon's objections as to these entries,[8] reducing the hourly billing rate to $110, which is within

---

[7] Paragon also takes issue with the hourly billing rate for Signet's paralegals (ranging $75–110/hour) and investigators (ranging $80–155/hour). The Court finds that these rates are reasonable and overrules Paragon's objections to the hourly billing rates for paralegals and investigators in these entries. *See Saldivar v. Austin Indep. Sch. Dist.*, No. A-14-CA-00117-SS, 2016 WL 1064654, at *4 (W.D. Tex. Mar. 15, 2016), *aff'd*, 675 F. App'x 429 (5th Cir. 2017) ("[F]ederal courts sitting in Texas [ ] have found a range of $60 to $200 to constitute a reasonable hourly rate for paralegal work.").
[8] Doc. 485, Obj. 299; Doc. 485-3, Objs. 140, 155; Doc. 485-4, Objs. 161, 171, 196; Doc. 485-6, Objs. 105, 151, 155, 175, 194, 206–07; Doc. 485-7, Objs. 72, 80, 107, 109; Doc. 485-8, Objs. 47, 65, 124, 183; Doc. 485-9, Objs. 56, 88–89, 95–97, 125, 134, 139, 154, 168, 172–73; Doc. 485-10, Objs. 57, 59, 62, 65, 132, 174–75, 178, 181; Doc. 485-11, Obj. 3; Doc. 485-12, Objs. 22, 33, 35–36, 65; Doc. 485-13, Objs. 60, 118; Doc. 485-14, Objs. 4, 6, 35, 78, 82; Doc. 485-15, Objs. 21, 28, 96, 113; Doc. 485-16, Objs. 6–7, 10, 22, 38, 54, 56, 61, 63; Doc. 485-17, Objs. 127, 191, 195, 216, 225–26, 231, 234,

the range of compensation for Signet's paralegals.  As to the remaining entries to which Paragon objects in this category, the Court finds that the tasks do not involve an attorney performing clerical work.  The Court overrules those objections.

### D.  Travel Time

Paragon objects to 12 entries, representing 46.3 hours of legal services, as non-working travel time.  (Response, Doc. 481, 18)

Courts in the Fifth Circuit typically compensate non-working travel time at 50% of an attorney's rate.  *See, e.g.*, *Vanderbilt Mortg. & Fin., Inc. v. Flores*, No. CIV.A. C-09-312, 2011 WL 2160928, at *6 (S.D. Tex. May 27, 2011) (collecting cases).

Signet agreed to reduce by half the travel time for which it seeks recovery.  These 23.15 conceded hours are included in the $109,593.75 that Signet agreed to not request.  To the extent that Paragon objects to any recovery for non-working travel time, the Court overrules the objection.

### E.  Duplicative Billing

Paragon objects to 203 time entries, representing 172.1 hours, as duplicative billing—e.g., the same meeting billed by two or more lawyers in attendance.  (Response, Doc. 481, 18)

Signet agreed to request legal fees for only one attorney's attendance at a given meeting. However, the Court found a few instances where Signet failed to eliminate a duplicative entry. The Court sustains Paragon's objections to those entries.[9]  As to any remaining objections by

---

243, 245–46, 249, 251; Doc. 485-18, Objs. 7, 9, 13, 43, 50, 54, 63–65, 148, 155, 163; Doc. 485-19, Objs. 15, 21, 24–25, 30–31, 49, 67; Doc. 485-20, Objs. 56, 115, 123, 141–42, 148; Doc. 485-22, Objs. 80–81; Doc. 485-24, Objs. 7, 66, 158, 161; Doc. 485-25, Objs. 6, 55, 63–65, 94; Doc. 485-26, Objs. 7–8, 69–70, 79, 114; Doc. 475-27, Objs. 64, 96; Doc. 475-28, Obj. 88; Doc. 475-29, Objs. 20–22, 31, 39, 44, 64–65, 67, 75–76, 91–92, 97, 100, 104, 110–11, 114, 119, 121, 133, 146–47, 153, 155–56, 158, 161, 165, 178, 197–98, 200, 216, 233–34, 238; Doc. 485-30, Objs. 68–70, 79, 83, 99, 102, 109, 115, 128–29, 131–32, 134, 143; Doc. 485-31, Objs. 12, 16–19; Doc. 485-32, Objs. 6, 22, 28; Doc. 485-33, Obj. 8.

[9] Doc. 485, Obj. 50; Doc. 485-12, Obj. 34; Doc. 485-13, Obj. 99.

Paragon for duplicative billing, the Court has reviewed the entries at issue and overrules the objections.

### F. Claims/Issues Not Prevailed Upon and Claims By or Against Other Parties

Paragon objects to 656 entries, representing 477.9 hours of services, as legal work related to claims and issues on which Signet did not prevail.  (*Id.* at 18–19)  Paragon also objects to 211.9 hours, or 710 entries, devoted solely to claims by or against other parties.  (*Id.* at 20)  Because these categories are conceptually similar, the Court considers them together.

"A prevailing litigant may not recover for hours devoted solely to claims against other parties."  *Kellstrom*, 50 F.3d at 327.  "But when claims against multiple parties share a 'common core of facts' or 'related legal theories,' a fee applicant may claim all hours reasonably necessary to litigate those issues."  *Id.* (quoting *Hensley*, 461 U.S. at 434–35).  Similarly, when a party prevails as to some but not all claims against a party, the party may recover attorney's fees for hours devoted solely to claims on which it prevailed and for which a basis exists to recover attorney's fees.  *See Abell v. Potomac Ins. Co. of Ill.*, 946 F.2d 1160, 1168–69 (5th Cir. 1991).  "Where time spent on unsuccessful issues is difficult to segregate, no reduction of fees is required."  *Id.*

The Court previously concluded that Signet may recover attorney's fees related to the Noble and Paragon Claims.  Signet does not request recovery of attorney's fees for legal services related solely to the Gulf Copper Claim or the UT Claim.  And the Court finds that Signet may not recover attorney's fees for work devoted solely to claims by and against the American Club.  Reviewing the objected-to entries in this category, the Court finds that some of the time entries record legal services related solely to the Gulf Copper Claim, the UT Claim, or the American Club.  The Court sustains Paragon's objections to these time entries.[10]

---

[10] Doc. 485-1, Objs. 13, 18–19; Doc. 485-2, Obj. 160; Doc. 485-3, Objs. 31–32, 63–64, 69–70, 72, 78, 110–11, 160–62, 182, 188, 203–04, 219; Doc. 485-4, Objs. 2, 7, 10, 17–18, 34–35, 44–45, 73, 81, 148, 195; Doc. 485-5, Objs. 40, 67, 82–83, 88; Doc. 485-6, Objs. 7, 221, 248; Doc. 485-7, Objs. 29, 48–49, 58, 77–78, 118, 123, 130, 139–40, 146; Doc. 485-8, Objs. 31, 55, 109, 116, 133, 135; Doc. 485-9, Objs. 10–12, 61–63, 66, 71, 78, 87, 102–03, 105, 131, 152–53, 193, 203–05, 221; Doc. 485-10, Objs. 32, 49, 73, 117–18, 125, 136, 173; Doc. 485-11, Objs. 32, 35, 37, 90, 105, 113; Doc. 485-12, Obj.

As to the remaining objections in this category, the Court finds that the time entries relate to the Noble or Paragon Claims.  To the extent that some of these time entries also relate to the claims for which Signet may not recover attorney's fees, the Court finds that the work shared a common core of facts and related legal theories with the Noble and Paragon Claims, rendering the attorney's fees recoverable.[11]  The Court overrules these objections.

### G.  Claims/Issues Not Pursued

 Paragon objects to 78 entries, representing 59.2 hours of legal services, devoted to claims and issues that Signet did not pursue in this litigation.  (Response, Doc. 481, 19–20)  Paragon identifies twelve subcategories of such claims and issues: (a) Motion to Compel; (b) Motion to Quash; (c) Motion for Default; (d) Motion for Directed Verdict/Judgement as a Matter of Law; (e) Motion to Strike; (f) Spoliation; (g) Distinct Occasions; (h) Flotilla Doctrine; (i) Personal Contract Exception; (j) Implied Indemnity/Tort Indemnity; (k) Safe Berth; and (l) Hague Service.

Signet does not oppose the objections to the legal services performed in connection with a possible Motion to Strike.  These entries are included in the conceded hours within the $109,593.75 that Signet agreed to withdraw from its request.  The Court sustains Paragon's objection to these entries.

As to the remaining objected-to entries, "there is ample authority for the proposition that a partially prevailing party may recover all reasonably incurred attorney fees, even though the party did not prevail on all claims, as to all defendants, or as to all issues in a matter." *Coleman v. Houston Indep. Sch. Dist.*, No. 98-20692, 1999 WL 1131554, at *5 (5th Cir. Nov. 8, 1999).  Work on "unsuccessful claims" that "involve a 'common core of facts' or are based upon 'related legal

---

14; Doc. 485-13, Objs. 4, 14, 45, 49–50, 52, 64, 111, 120, 157, 182; Doc. 485-14, Objs. 15, 21, 25, 65; Doc. 485-15, Objs. 12, 38, 71; Doc. 485-16, Objs. 35, 40, 75–77, 80; Doc. 485-17, Objs. 123–24, 128, 172, 174, 183, 203, 209, 228, 253; Doc. 485-18, Objs. 36, 70, 76, 125, 142, 160, 167; Doc. 485-19, Objs. 6–7, 19–20, 58, 65, 86, 95, 102, 108–10, 132; Doc. 485-20, Objs. 6, 14, 16, 36–39, 105, 117, 126; Doc. 485-21, Objs. 6–9, 12, 14, 17, 20, 68–69, 73, 76, 84, 93–95, 109, 111; Doc. 485-22, Objs. 4, 9, 20, 26–27, 34, 42, 47, 51–52, 54–57, 59–60, 62, 65, 70–74, 79, 89; Doc. 485-23, Objs. 21–23, 29, 31, 61, 67, 78, 83, 90–91; Doc. 485-24, Objs. 28, 48, 82; Doc. 485-25, Objs. 50, 58; Doc. 475-27, Objs. 88–89, 94; Doc. 475-28, Objs. 67–68, 71–72, 89, 97; Doc. 485-29, Objs. 38, 51, 59, 143, 179–80; Doc. 485-31, Objs. 55, 64, 67–69, 73; Doc. 485-32, Obj. 51.

[11] *See, e.g.*, Doc. 485-1, Objs. 26, 28; Doc. 485-4, Obj. 166.

theories,' . . . are recoverable on the theory that they contributed to the plaintiff's ultimate success." *Id.* (quoting *Hensley*, 461 U.S. at 435).

At the same time, counsel for prevailing parties must exercise billing judgment, which "refers to the usual practice of law firms in writing off unproductive, excessive, or redundant hours." *Walker v. U.S. Dep't of Hous. and Urb. Dev.*, 99 F.3d 761, 769 (5th Cir. 1996). In *Walker*, the Fifth Circuit concluded that the plaintiffs' counsel had not exercised billing judgment, in part because they had not eliminated "time spent 'researching and investigating issues that ultimately' were not pursued." *Id.* The court explained that as to those issues, the plaintiffs "cannot have prevailed on issues they did not pursue." *Id.*

Paragon relies on *Walker* to challenge Signet's recovery of attorney's fees incurred in connection with motions on which Signet did not prevail or did not file, and on research of legal theories that Signet ultimately did not advance. In *Walker*, the Fifth Circuit initially determined whether the plaintiffs qualified as prevailing parties on various "issues". *See id.* at 767 ("Thus, the plaintiffs are not the prevailing party on this issue as to Dallas."); *id.* at 768 ("[W]e do not find that the holding that the plaintiffs are the prevailing party as to these issues is clearly erroneous."). The court then addressed recoverable attorney's fees, explaining that part of exercising billing judgment includes not billing "for time on issues on which [the parties] do not prevail". *Id.* at 769. This general statement aligns with the concept that a prevailing party as to some issues should not seek recovery of attorney's fees on separate and distinct issues on which the party is not a prevailing party.

The language in *Walker*, however, does not support the conclusion that as to an issue on which a party has prevailed, it may only recover attorney's fees for legal theories that the Court accepted or for legal services that resulted in presenting a matter to the court. In connection with prevailing on an issue, attorneys necessarily engage in legal research and efforts that are not presented to the court. For example, attorneys may consider colorable legal theories that they ultimately decide need not or should not be advanced. They may prepare and present a motion

on which they do not succeed, or may prepare a motion that case developments render moot. Nonetheless, by allowing counsel to select the strongest arguments and prepare for different eventualities, this work still "contribute[s] to the plaintiff's ultimate success." *Coleman*, No. 98-20692, 1999 WL 1131554, at *5; *see Lewallen v. City of Beaumont*, No. CIV.A. 1:05-CV-733-TH, 2009 WL 2175637, at *8 (E.D. Tex. July 20, 2009), *aff'd*, 394 F. App'x 38 (5th Cir. 2010) ("[T]he relevant question is not whether the issue was presented to the Court, but whether the time spent on the issue was reasonable in light of the overall claims being pursued."). Indeed, courts have repeatedly noted that prevailing parties may recover for legal services rendered in connection with unsuccessful motions, as long as the overall efforts of the attorneys resulted in victory for the client and were reasonable and necessary to accomplish that result. *See, e.g., Barrow*, No. 3:00-CV-0913-D, 2005 WL 6789456, at *9; *Rodriguez v. Mech. Tech. Servs., Inc.*, No. 1:12-CV-710-DAE, 2015 WL 8362931, at *4 (W.D. Tex. Dec. 8, 2015). Applying these principles to the current case, the Court finds that Signet may recover all attorney's fees reasonably incurred for work on the Paragon and Noble Claims, even as to legal theories or motions considered but not presented or that proved unsuccessful, as long as the legal services ultimately contributed to Signet's victory on those claims.

To that end, the Court finds that work done on the Motion for Default, Flotilla Doctrine, and Hague Service relate solely to the Signet Claim and did not contribute to Signet's victory as to the Paragon and Noble Claims. Signet is not entitled to these attorney's fees, and the Court sustains the objections to these time entries.[12]

As for the remaining objections, the Court finds that the legal services related to and contributed to Signet's victory as to the Noble and Paragon Claims, even if Signet did not ultimately present or prevail on the legal theories and motions. Paragon's objections to these time entries are overruled.

---

[12] Doc. 485, Objs. 177, 207, 216; Doc. 485-3, Obj. 55; Doc. 485-10, Objs. 127–29; Doc. 485-11, Objs. 33–34; Doc. 485-15, Obj. 15; Doc. 485-24, Objs. 156, 165.

### H. Pre-litigation Work

Paragon objects to 320 entries, representing 195 hours of legal services, for pre-litigation work. (Response, Doc. 481, 20–21)

Generally, "prevailing parties may be compensated for time spent preparing to file suit". *Watkins v. Fordice*, 7 F.3d 453, 458 (5th Cir. 1993) (42 U.S.C. § 1988 case); *see also Genesis Marine*, 951 F.3d at 631 (applying Section 1988 jurisprudence to interpret the meaning of "prevailing party" under maritime contract law). When awarding such fees, courts ensure that the requested attorney's fees for pre-litigation services are not greater than necessary. *See, e.g.*, *McGee v. Tregre*, No. CV 18-3341, 2019 WL 3308324 (E.D. La. Feb. 11, 2019), *report and recommendation adopted*, No. CV 18-3341, 2019 WL 2366881 (E.D. La. June 5, 2019).

The Court finds that the legal services performed by Signet's counsel for pre-litigation work was reasonable and not greater than necessary, especially in light of the scale and complexity of the admiralty action. The Court overrules Paragon's objections to these time entries.

### I. Activities Unnecessary and Unrelated to This Litigation

Paragon argues that Signet's counsel billed for 108.3 hours, included within 186 entries, for work "that appear[s] to be unnecessary or otherwise unrelated to the instant litigation and/or a prevailing claim." (Response, Doc. 481, 21) Paragon identifies the following subcategories: (a) Experts who were not retained; (b) Depositions which were cancelled/not taken; (c) Witnesses who did not testify; (d) Experts for dismissed parties; (e) Collaboration with dismissed parties post-dismissal; (f) Various sur-replies; and (g) Other items not utilized.

Just as prevailing parties are entitled to recover attorney's fees incurred for researching alternative issues and arguments, they may similarly recover such fees for time spent considering and interviewing possible experts and fact witnesses. In addition, the Court finds that the entries to which Paragon objects in this category relate to the claims on which Signet prevailed and for which it may recover its attorney's fees. As a result, the Court overrules Paragon's objections to time entries within this category.

### J.  Miscellaneous

Finally, Paragon objects to 238 time entries, representing 104.9 hours of legal services, in the following subcategories: (a) Time recorded by a timekeeper not included in Signet's Affidavit; (b) Time related solely to the "Signet Claim," for which Signet is not seeking attorney's fees; (c) Time pertaining solely to Signet's Complaints in Limitation; and (d) Time possibly belonging to a different file. (*Id.*)

Signet does not oppose Paragon's objections to time recorded by a timekeeper not included in Signet's Affidavit or time it believes related solely to the Signet Claim.  Signet accounted for these concessions in the $109,593.75 that it agreed to not request.  The Court sustains Paragon's objections as to these entries.

With respect to the remaining entries, Signet contends that based on its review of the submitted billing records, no time entry belongs to a different file.  The Court finds that Signet's representation, coupled with the descriptions for the challenged time entries, suffice for all but one of the entries.  The Court sustains the objection to one time entry[13] and overrules the objection as to the rest.

As to legal services related to its Complaints in Limitation, Signet argues that those fees are recoverable because those limitation actions were effectively a defense to the Paragon and Noble Claims.  The Court, for the most part, agrees.  Signet's Complaints in Limitation provided an avenue through which the Paragon and Noble Claims could be litigated.  However, some of the time entries falling within this category lead the Court to conclude that they relate solely to legal services performed in furtherance of Signet's claims against Paragon.  The Court sustains the

---

[13] Doc. 485-20, Obj. 95.

objections to these entries.[14]  The Court overrules any remaining objections to time entries within this category.

### K.  Total Attorney's Fees Award

After eliminating the attorney's fees to which the Court has sustained one or more objections, the Court finds that Signet is entitled to an award of $1,362,042.85 in attorney's fees.

## III.  Expenses Award

Signet initially requested an award of $410,614.21 in nontaxable expenses incurred in connection with the Noble and Paragon Claims.  (Motion, Doc. 475, 28)  However, after reviewing Paragon's objections, Signet agreed to reduce its request to $367,305.88.  (Reply, Doc. 484, 7)

"Expenses that are normally charged to a fee paying client are recoverable as part of a fee award, unless the court deems the expense unreasonable."  *Gonzalez v. Assocs. Health & Welfare Plan*, No. 02-40691, 2002 WL 31933208, at *1 (5th Cir. Dec. 23, 2002) (citing *Associated Builders & Contractors, Inc. v. Orleans Parish Sch. Bd.*, 919 F.2d 374, 380 (5th Cir. 1990)).  The party requesting expenses should submit supporting documentation.  *See In re High Sulfur Content Gasoline Prod. Liab. Litig.*, 517 F.3d 220, 230 (5th Cir. 2008).

In this case, Signet is entitled to recover its nontaxable expenses incurred in connection with the Paragon and Noble Claims.  Paragon objects to five categories of expenses.

### A.  Pre-litigation Expenses

Paragon challenges one expense of $879.75 incurred to take the sworn statements of witnesses before the litigation commenced.  (Response, Doc. 481, 25)

---

[14] Doc. 485-3, Objs. 67, 195, 199, 202; Doc. 485-4, Objs. 48, 50; Doc. 485-6, Obj. 142; Doc. 485-12, Obj. 54; Doc. 485-18, Obj. 18; Doc. 485-19, Obj. 26; Doc. 485-20, Obj. 35.

As previously discussed, parties may recover reasonable pre-litigation expenses.  Here, the Court finds the challenged expense reasonable and overrules Paragon's objection.

### B.  Signet's Complaints in Limitation

Paragon objects to six entries, or $18,400.68, of nontaxable expenses incurred in connection with Signet's Complaints in Limitation.  (*Id.* at 18)  The Court has already concluded that Signet is entitled to recover attorney's fees related to its Complaints in Limitation.  Thus, Signet may also recover its expenses incurred in connection with those actions.  The Court overrules Paragon's objections to these time entries.

### C.  Non-recoverable Out-of-Pocket Expenses

Paragon argues that the $1,650 that Signet paid when the parties mediated the case is not a recoverable out-of-pocket expense.  (*Id.* at 25 (relying on *Lyons v. Aleman*, Civil Action No. 5:99-CV-320-C, 2002 U.S. Dist. LEXIS 9447, at *21 (N.D. Tex. May 29, 2002))).  While the district court in *Lyons* reasoned that "the costs of mediation are not reasonable out-of-pocket expenses which should be awarded to the prevailing party", it relied on a Fifth Circuit decision that applied 28 U.S.C. § 1920.  *Lyons*, Civil Action No. 5:99-CV-320-C, 2002 U.S. Dist. LEXIS 9447, at *21 (citing *Mota v. Univ. of Tex. Houston Health Sci. Ctr.*, 261 F.3d 512, 530 (5th Cir. 2001)).  Section 1920 governs taxable costs, rather than the award of nontaxable expenses.  *See Taniguchi v. Kan Pac. Saipan, Ltd.*, 566 U.S. 560, 573 (2012) (distinguishing between "taxable costs", which are "limited to relatively minor, incidental expenses as is evident from § 1920" and "nontaxable expenses", which include fees for "experts, consultants, and investigators").  Signet requests the mediation fee as a nontaxable expense, and not via Section 1920.

The Court finds that the mediation expense incurred by Signet in connection with the Paragon Claim is reasonable and recoverable.  The Court overrules Paragon's objection.

### D.  Consultant and Expert Fees

Paragon objects to 30 entries, or $123,516.69, in expenses incurred on consultants and experts who Paragon contends failed to bill their time with sufficient specificity.  (Response, Doc.

481, 26)  Paragon also objects to eight entries, or $100,053.12, of such expenses as excessive.  (*Id.*)  Finally, Paragon objects to five entries, or $22,050, in expenses incurred on an undesignated expert, Dr. Tom Kwan.  (*Id.*)

In support of its numerous objections to Signet's consultant and expert fees, Paragon cites to one case: *Recursion Software, Inc. v. Double-Take Software, Inc.*, No. 4:10-CV-403, 2013 U.S. Dist. LEXIS 203483, at *27 (E.D. Tex. Jan. 3, 2013).  In that case, the district court denied a prevailing party recovery of its expert witness fees because the statute at issue did not authorize it, noting that "when a prevailing party seeks reimbursement for fees paid to its own expert witnesses, a federal court is bound by the limit of [28 U.S.C.] § 1821(b), absent contract or explicit statutory authority to the contrary."  *Id.* (alteration in original) (quoting *Crawford Fitting Co. v. J. T. Gibbons, Inc.*, 482 U.S. 437, 439 (1987)).  In the current matter, however, Signet relies on the contractual provision within the Tariff, rendering *Recursion Software* inapplicable.

As for the undesignated expert, Signet points out that it designated Dr. Kwan (*See* Designations, Doc. 103), but that he had to withdraw due to a serious illness.  Before withdrawing, however, Dr. Kwan "worked closely" with Signet's other consultants on the mooring component of the case.  (Reply, Doc. 484, 26)  Given the circumstances, the Court finds that Dr. Kwan's expenses are recoverable, as his efforts aided Signet's defense against the Paragon Claim.

Upon review of Signet's other claimed fees for consultants and experts, the Court finds that they are reasonable, given the scope, complexity, and duration of the case.  The Court overrules Paragon's remaining objections.

### E.  Excessive Court Reporter Fees

Finally, Paragon challenges as excessive the $15,775 that Signet paid a court reporter.  (Response, Doc. 481, 25)  In its Reply, Signet conceded that Paragon paid half of that amount.

(Reply, Doc. 484, 25)  Based on this concession, the Court sustains the objection and reduces the recoverable amount to $7,887.50.

### F.  Total Nontaxable Expenses Award

In light of its rulings concerning Paragon's objections to nontaxable expenses, the Court finds that Signet is entitled to an award of $353,499.48 in nontaxable expenses.

## IV.  Costs Award

Signet initially requested an award of $63,732.76 for taxable costs.  (Motion, Doc. 475, 27)  After reviewing Paragon's objections, Signet reduced its request to $62,091.98.  (Reply, Doc. 484, 7)

While "Federal Rule of Civil Procedure 54(d) gives courts the discretion to award costs to prevailing parties", 28 U.S.C. § 1920 cabins that discretion by delineating six categories of recoverable taxable costs:

   (1) "Fees of the clerk and marshal;"

   (2) "Fees for printed or electronically recorded transcripts necessarily obtained for use in the case;"

   (3) "Fees and disbursements for printing and witnesses;"

   (4) "Fees for exemplification and the costs of making copies of any materials where the copies are necessarily obtained for use in the case;"

   (5) "Docket fees under section 1923" of Title 28; and

   (6) "Compensation of court appointed experts, compensation of interpreters, and salaries, fees, expenses, and costs of special interpretation services under section 1828" of Title 28.

*Taniguchi*, 566 U.S. at 565; 28 U.S.C. §§ 1920(1)–(6).  Courts apply "a strong presumption that the prevailing party will be awarded costs." *Pacheco v. Mineta*, 448 F.3d 783, 793 (5th Cir. 2006).  But if a party objects, "the party seeking costs bears the burden of verifying that the costs were necessarily incurred in the case rather than just spent for the convenience of counsel." *Jerry v. Fluor Corp.*, No. CIV.A. H-10-1505, 2012 WL 4664423, at *2 (S.D. Tex. Oct. 2, 2012) (citing *Fogleman v. ARAMCO*, 920 F.2d 278, 286 (5th Cir. 1991)).

### A.  Copying Costs

Paragon first objects to thirteen entries, or $11,052, of costs incurred for copies, on the grounds that these entries lack description and supporting documentation.  (Response, Doc. 481, 22)

Courts do not require precise itemization of copies made.  *See United Tchr. Assocs. Ins. Co. v. Union Lab. Life Ins. Co.*, 414 F.3d 558, 574 (5th Cir. 2005).  "[T]he fact that a prevailing party does not submit an itemized invoice regarding the photocopying costs incurred does not preclude an award of such costs where counsel declares under penalty of perjury that such costs are correct and necessarily incurred." *Hassinger v. JP Morgan Chase & Co.*, No. CIV.A. 06-2931, 2009 WL 2382960, at *1 (E.D. La. July 27, 2009) (citing *United Tchr. Assocs.*, 414 F.3d at 574). In support of its request for copying costs, Signet provided invoices and submitted a sworn affidavit of counsel affirming that Signet seeks "the costs of making copies of any materials where the copies are necessarily obtained for use in the case".  (Aff. of Kevin P. Walters, Doc. 475-1, ¶ 17) The Court finds Signet's documentary support and counsel's sworn representations adequate, and overrules Paragon's objections to these entries.

### B.  Court Costs

Paragon objects to two entries, or $800, of court costs incurred in connection with the Signet Claim based on a lack of description and documentation.  (Response, Doc. 481, 22)  The entries themselves read "Court Cost Clerk, U.S. District Court" and then detail the invoice number and date of filing.  The supporting documentation demonstrates that the costs relate to Signet's filing of its Complaints in Limitation.   Moreover, Signet provided additional supporting documentation with its Reply.  (*See* Aff. of Kevin P. Walters, Doc. 484-1, 7)  The Court overrules these objections.

### C.  Court Reporter Invoices

Finally, Paragon objects to two entries, or $4,649.93, of costs incurred for court reporter services for the testimony of Mark Thompson as well as the depositions of Lonnie Williams,

Dennis Iselt, Joseph Sanna, and Captain Josh Macklin.  (Response, Doc. 481, 22–23)  Paragon asserts that these costs do not pertain to claims and issues on which Signet prevailed.  The Court disagrees and finds that the record demonstrates that these costs related to the Paragon Claim, rendering them recoverable by Signet under Rule 54.  As a result, the Court overrules Paragon's objections to these entries.

### D.  Total Costs Award

Although the Court does not sustain any of Paragon's objections to Signet's claimed costs, the Court finds a mathematical discrepancy in Signet's reduced request for $62,091.98.

Signet originally requested $63,732.76 in costs, but then did not contest some of Paragon's objections and reduced its request.  As one example, Signet conceded to one entry worth $2,009.50.  (Invoice, Doc. 485-34, Obj. 18)  Removing this entry alone would reduce the originally requested $63,732.76 to below the amount that Signet now requests.

After overruling all of Paragon's objections, the Court calculates the proper award of costs by adding together the $43,570.55 in costs to which Paragon did not object (*See* Response, Doc. 481, 14), and the $16,501.93 in costs to which the Court overruled all of Paragon's objections.  The Court finds that Signet is entitled to an award of $60,072.48 in taxable costs.

## V.    Appellate Fees

Signet requests $87,500 in estimated appellate attorney's fees and $5,000 in estimated appellate costs.  (Motion, Doc. 475, 26)

In the Fifth Circuit, "[i]t is well settled . . . that a denial of appellate attorney's fees by the district court before an appeal is taken is proper."  *Am. Zurich Ins. Co. v. Jasso*, 598 F. App'x 239, 251 (5th Cir. 2015); *see also Instone Travel Tech Marine & Offshore v. Int'l Shipping Partners, Inc.*, 334 F.3d 423, 433 (5th Cir. 2003) ("The issue of appellate attorney's fees is a matter for the district court *following* the resolution of an appeal." (emphasis added)).  As no appeal has yet occurred in this consolidated matter, the Court denies without prejudice the request for appellate attorney's fees and costs.

**VI.**     **Conclusion**

For the reasons stated above, it is:

**ORDERED** that Signet Maritime Corporation's Motion for Recovery of Attorney's Fees and Related Nontaxable Expenses Pursuant to Rule 54(d)(2) and Recovery of Taxable Costs Pursuant to Rule 54(d)(1) (Doc. 475) is **GRANTED IN PART AND DENIED IN PART**, as detailed in this Order and Opinion; and

**ORDERED** that Signet Maritime Corporation is entitled to recover from Paragon Asset Company Ltd. $1,362,042.85 in reasonable attorney's fees, $353,499.48 in nontaxable expenses, and $60,072.48 in taxable costs.

Signed on March 8, 2023.

*Fernando Rodriguez, Jr.*
Fernando Rodriguez, Jr.
United States District Judge